UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

HEATHER YOCUM,                                                                                           Plaintiff,

v.                                                                           Civil Action No. 3:19-cv-761-DJH-RSE

AETNA LIFE INSURANCE COMPANY,                                                                 Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter arose when Defendant Aetna Life Insurance Company (Aetna)[1] denied Plaintiff Heather Yocum's claim for disability benefits. (Docket No. 14-1, PageID # 522–23) Yocum sued, arguing that Aetna's decision to deny her benefits was arbitrary and capricious. (D.N. 1-1) The matter is before the Court on the parties' cross-motions for judgment on the administrative record. (D.N. 41; D.N. 42) For the reasons set forth below, the Court will deny Yocum's motion and grant Aetna's motion.

**I.**

United Parcel Service of America, Inc. (UPS) employed Yocum as a Quality Assurance Analyst (D.N. 14-1, PageID # 210, 302; D.N. 34-1, PageID # 1230), a position with duties classified as "sedentary" or "light."[2] (D.N. 14-1, PageID # 393; D.N. 34-1, PageID # 1266, 1275,

---

[1] "'Aetna' is a trade name under which Aetna Life Insurance Company operates" and has not appeared as a separate party before the Court. (D.N. 42-1, PageID # 1702) In her Complaint, Yocum names only "Aetna Life Insurance Company" as the defendant and refers to "Aetna" as shorthand for Aetna Life Insurance Company. (D.N. 1-1, PageID # 10)

[2] The "essential job functions" of Yocum's position include the following:
    Work in a seated position for the duration of the workday . . . . Full time: up to 8 hours per day, 5 days per week[.]
    Ability to work varying shifts and additional hours and/or overtime depending on service needs.

1

1278, 1324–25)  As a UPS employee, Yocum enrolled in Aetna's GP-839230 Long Term Disability (LTD) policy.  (D.N. 14-1, PageID # 205)  Pursuant to the policy, Aetna has sole discretion to review all claims and "determine whether and to what extent employees and beneficiaries are entitled to benefits." (*Id.*, PageID # 202)  The plan outlines the following "Test of Disability":

> From the date that you first became disabled and until monthly benefits are payable for 24 months you meet the test of disability on any day that:
> (1) You cannot perform the **material duties** of your **own occupation** solely because of an **illness**, **injury**, or disabling pregnancy-related condition; and
> (2) Your earnings are 10% or less of your **adjusted predisability earnings**.

(*Id.*, PageID # 107)  A participant's LTD benefits end on the date she "no longer meet[s] the LTD test of disability, as determined by Aetna" or "fail[s] to provide proof" that she "meet[s] the LTD test of disability." (*Id.*, PageID # 108)  As a UPS employee, Yocum also enrolled in a self-funded Short Term Disability (STD) plan administered by Aetna.  (*See* D.N. 34-1, PageID # 1250)

**A.     STD Claim**

On July 1, 2016, Yocum fractured her foot and applied for STD benefits, which Aetna approved through August 3, 2016.  (*Id.*, PageID # 1250–51)  Aetna extended Yocum's STD benefits after she contacted Aetna on September 1, 2016, complaining of pelvic pain, though her foot fracture had healed.  (*Id.*, PageID # 1290, 1306, 1318, 1320)  Two months later, on November 9, 2016, Aetna learned that Yocum's treating gynecologist Dr. Robert McQuady never determined that Yocum had limitations that prevented her from working (*id.*, PageID # 1321), and notified

---

Report to work on a regular and timely basis and complete the scheduled workday on a consistent basis. . . .
Bend, stoop/squat, crouch/kneel, climb stairs and walk intermittently throughout the workday. . . .
Demonstrate cognitive ability to . . . concentrate, memorize, and recall[.]
(D.N. 14-1, PageID # 1187)

2

Yocum that it would no longer pay her STD benefits unless she provided further evidence supporting her disability. (*Id.*, PageID # 1493–94) Yocum then submitted a letter from Dr. McQuady on November 30, 2016, which described the "typical" experience of a patient with "chronic pelvic pain syndrome." (*Id.*, PageID # 1344) Aetna found Dr. McQuady's letter insufficient to reverse its decision and extended the deadline for Yocum to appeal its denial of her STD benefits. (*Id.*, PageID # 1344, 1498)

Yocum appealed the denial on March 27, 2017, submitting updated medical records from visits to Norton Urogynecology Specialists in February and March 2017, which documented a diagnosis of interstitial cystitis during that time. (*Id.*, PageID # 1541–56, 1581–85) She also submitted a Functional Capacity Questionnaire completed on March 23, 2017, by Norton provider Emile Baker, A.P.R.N. (*Id.*, PageID # 1541–44) Ultimately, Yocum's STD claim was resolved by settlement. (*See* D.N. 14-1, PageID # 371–72; D.N. 42-1, PageID # 1706 (citing *Yocum v. Aetna*, No. 3:17-cv-724-CRS (W.D. Ky. Dec. 1, 2017)) Pursuant to the settlement, Aetna agreed to accept an LTD application from Yocum. (*See* D.N. 14-1, PageID # 371–72; D.N. 42-1, PageID # 1706)

**B.   LTD Claim**

In March 2018, Yocum submitted an LTD claim with a benefit effective date of January 27, 2017. (D.N. 14-1, PageID # 223, 371–72; D.N. 41-1, PageID # 1673–74) In support of her claim, Yocum provided Aetna with records from Dr. Jennifer Daily, her primary care physician, which included a Capabilities and Limitations Worksheet (CLW) supplied by Aetna and completed by Dr. Daily on March 26, 2018. (D.N. 14-1, PageID # 407–08; D.N. 41-1, PageID # 1670–96) In the CLW, Dr. Daily noted that Yocum suffered from Crohn's Disease and "depression with anxiety" and opined that Yocum was "unable to perform work related tasks."

(D.N. 41-1, PageID # 1670–78) Aetna sought additional medical records from Dr. McQuady, but he did not respond. (D.N. 14-1, PageID # 394)

The parties contest whether Aetna based its initial decision on a partial review of the evidence Yocum submitted with her LTD claim. (*See* D.N. 41, PageID # 1660–61; D.N. 44, PageID # 1730–31) It is, however, undisputed that in its initial determination, Aetna considered the records from medical visits around January 27, 2017, the claim effective date. (D.N. 14-1, PageID # 407–08) Nevertheless, Aetna denied Yocum's application for LTD benefits on July 7, 2018, and notified her that she could file an appeal. (*Id.*, PageID # 407–08)

### 1.     First LTD Appeal

On November 28, 2018, Yocum appealed Aetna's denial, asserting disability "since August 31, 2016," due to "irritable bowel syndrome (IBS), Crohn's Disease, interstitial cystitis, pelvic floor dysfunction, anxiety, and depression." (*Id.*, PageID # 699–700; *see id.*, PageID # 412) Yocum provided additional documents for Aetna to consider on appeal, including diagnostic tests and updated medical records from her treating gastroenterologist Dr. Jeffrey Tuvlin, Dr. Daily, and Norton Urogynecology Specialists. (*See id.*, Page ID # 699–1172) Norton records from early 2017 documented Yocum's worsening gynecological symptoms and interstitial cystitis diagnosis, but in February 2018 stated that Yocum "needs to follow up with [a gastrointestinal provider]" because she had "no issues . . from a Urogyn[ecological] standpoint" and listed her interstitial cystitis diagnoses as "resolved." (*Id.*, PageID # 708; *see id.*, PageID # 702–869) Records from Dr. Daily noted that Yocum had Crohn's disease (*id.*, PageID # 891), while Dr. Tuvlin diagnosed Yocum with IBS and "possible" Crohn's disease. (*Id.*, PageID # 1137)

Aetna consulted with Reliable Review Services (RRS), a third party, to obtain three independent physician reviews of Yocum's medical records. (*See id.*, PageID # 671–96)

Gastroenterologist Dr. Jeffrey Danzig, M.D., spoke with a nurse from Dr. Tuvlin's office (*id.*, PageID # 598–99), who identified "a psychological overlay" that exacerbated Yocum's gastrointestinal symptoms but agreed with Dr. Danzig that Yocum had no functional impairment "from a [gastrointestinal] point of view." (*Id.*, PageID # 695) Psychology specialist Dr. David Nowell, Ph.D., consulted with Dr. Daily, who confirmed that she did not refer Yocum to a behavioral health specialist and did not observe "cognitive problems" in Yocum. (*Id.*, PageID # 687–88) Dr. Nowell ultimately determined that Yocum was not "psychiatric[ally] or neurocognitive[ly]" functionally impaired. (*Id.*)

Finally, obstetrics and gynecology specialist Dr. Ervin Jones, M.D., Ph.D., unsuccessfully attempted to contact Dr. McQuady. (*Id.*, PageID # 678) Although he did not speak to Dr. McQuady, Dr. Jones determined that Yocum was "partially impaired" from January 27 until June 1, 2017, due to her interstitial cystitis. (*Id.*) He concluded that Yocum was not functionally impaired after that date, basing his opinion in part on Dr. Daily's June 1 referral of Yocum to a gastroenterologist. (*Id.*, PageID # 679, 908) During this June 1 visit, Yocum reported that her interstitial cystitis was improving after starting medication but would "flare up significantly with her other abdominal complaints." (*Id.*) Dr. Jones determined that by June 1, Yocum's complaints "changed," relating to gastrointestinal issues rather than interstitial cystitis, and thus she was not impaired from "an obstetrics/gynecology perspective" beyond June 1, 2017. (*Id.*, PageID # 678–79)

After providing Yocum with the independent physician reviews and giving her an opportunity to respond (*id.*, PageID # 412–49), Aetna partially reversed its denial based on Dr. Jones's opinion, providing Yocum LTD benefits until June 1, 2017. (*Id.*, PageID # 451, 679)

Aetna affirmed its denial of LTD benefits beyond this date, notifying Yocum that she could file a second administrative appeal. (*Id.*, PageID # 451)

### 2. Second LTD Appeal

Yocum appealed Aetna's denial for the claim period beginning on June 2, 2017, submitting diagnostic tests and medical records from June 2017 to November 2018. (*Id.*, PageID # 581–663) These records note that in August 2017, Yocum reaffirmed that her gynecological issues had improved with medication, but she still complained of gastrointestinal symptoms. (*See, e.g.*, *id.*, PageID # 581, 585, 589) Yocum had a colonoscopy, an endoscopy, and a gastric emptying study in 2017, all with "unremarkable" results. (*Id.*, PageID # 599, 607, 630, 633) After another normal colonoscopy in March 2018 and no reported improvement in symptoms, Dr. Tuvlin noted "the possibility of early Crohn's disease," though he opined that her symptoms were "more suggestive of predominantly constipation." (*Id.*, PageID # 643) Yocum also included records from her pelvic physical therapist, which stated in November 2018 that Yocum was "unable to self-manage [her] symptoms." (*Id.*, PageID # 647, 650) Yocum's treating providers were unable to diagnose her, despite documenting a variety of symptoms, including internal hemorrhoids, constipation, diarrhea, rectal bleeding, and abdominal pain and noting Yocum's anxiety about her medical issues. (*Id.*, PageID # 581–663)

Aetna contacted RRS for new independent physician reviews of Yocum's medical file for the period beginning on June 2, 2017. (D.N. 42-1, PageID # 1710; *see* D.N. 14-1, PageID # 543–79) The reviews were conducted by Dr. Jan Risden, M.D., a gynecologist; Dr. Steven Tawil, M.D., a gastroenterologist and internist; Dr. Stuart Stauber, M.D., an internist; and Dr. Michelle Harriman, Psy.D., a clinical psychologist. (*See* D.N. 14-1, PageID # 543–79) In addition to a file review, Dr. Risden attempted to contact Dr. McQuady once but was unsuccessful because the

number was disconnected. (D.N. 14-1, PageID # 573–78) Similarly, Dr. Tawil unsuccessfully attempted twice to contact Dr. William Evans, one of Yocum's treating gastroenterologists. (*Id.*, PageID # 562–69) Although Dr. Tawil acknowledged Yocum's gastrointestinal symptoms and IBS, he noted that her diagnostic tests showed no abnormal results beyond mild inflammation and internal hemorrhoids and that she experienced no weight loss or frequent hospitalization, indicating she was not functionally impaired from her gastrointestinal issues. (*Id.*) Dr. Stauber spoke with Dr. Daily, who agreed that Yocum's diagnostic tests were mostly negative except for "mild inflammation of the colon" and confirmed that she had "not observed any functional impairments" in Yocum. (*Id.*, PageID # 561) Dr. Harriman did not attempt to contact any of Yocum's treating providers, relying solely on a file review. (*Id.*, PageID # 545–50) All four independent reviewers determined that Yocum was not functionally impaired after June 1, 2017. (*Id.*, PageID # 543–79)

Aetna mailed Dr. Tawil's evaluation to Dr. Evans, who did not respond. (*Id.*, PageID # 465) Aetna also provided Yocum with the independent reviews before issuing its decision on her appeal. (*Id.*, PageID # 475–516) After receiving the reviews, Yocum submitted a Social Security Disability evaluation completed by Brendan K. Ryan, M.S., who concluded that Yocum had "slight" and "moderate" limitations on a variety of cognitive measures. (*Id.*, PageID # 537–40) Dr. Harriman reviewed the evaluation and maintained her prior determination that Yocum was not cognitively impaired, stating that Ryan's findings "were poorly supported." (*Id.*, PageID # 517–19) Ultimately, Aetna upheld the denial of Yocum's LTD benefits after June 1, 2017, based on Yocum's medical records and the independent physician reviews. (*Id.*, PageID # 522–23)

## C. Civil Complaint

Yocum filed a complaint in Jefferson Circuit Court on September 27, 2019, alleging that Aetna violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132, when it failed to pay her LTD benefits after June 1, 2017. (D.N. 1-1)  Aetna removed the action to this Court, invoking the Court's federal-question jurisdiction. (D.N. 1)  On February 13, 2020, the Court instructed both parties to file dispositive motions. (D.N. 13)  Yocum moved for summary judgment, arguing that Aetna's denial of her LTD benefits was arbitrary and capricious. (D.N. 41, PageID # 1664)  Aetna moved for summary judgment on the administrative record, asserting that its denial of Yocum's benefits after June 1, 2017, was "the result of a deliberate, principled reasoning process," and thus was not arbitrary and capricious. (D.N. 42-1, PageID # 1715)

## II.

The parties agree that the arbitrary-and-capricious standard applies to Aetna's determination (*id.*, PageID # 1714; D.N. 41, PageID # 1663), because Aetna had sole discretion to review all claims and determine to what extent benefits should be paid.[3]  *See Corey v. Sedgwick Claims Mgmt. Servs., Inc.*, 858 F.3d 1024, 1027 (6th Cir. 2017) ("When the plan vests the administrator with discretion to interpret the plan (as is undisputed in this case), the court reviews the benefits denial under the 'arbitrary and capricious' standard." (quoting *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 361 (6th Cir. 2002))).  Review under this standard is highly deferential, and a court must uphold the administrator's decision if it was "'the result of a deliberate, principled reasoning process' and 'supported by substantial evidence.'" *DeLisle v. Sun*

---

[3] Although UPS is listed as the "Plan Administrator," Aetna retained sole discretion to interpret and administer the plan. (*See* D.N. 14-1, PageID # 202)

8

*Life Assur. Co. of Canada*, 558 F.3d 440, 444 (6th Cir. 2009) (quoting *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006), *aff'd*, *Met. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)).

"When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Dig. Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (quoting *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)) (internal quotation marks omitted). "[H]owever, 'deferential review is not no review.'" *Filthaut v. AT&T Midwest Disability Benefit Plan*, 710 F. App'x 676, 681 (6th Cir. 2017) (quoting *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006)). Courts must "review the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id.* (quoting *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 552 (6th Cir. 2008)).

**A.      Conflict of Interest**

Yocum contends that Aetna's role in evaluating her claim and paying her benefits constitutes a conflict of interest requiring reversal or remand. (D.N. 41, PageID # 1667–68) "In the ERISA context, a conflict may exist when an administrator is simultaneously responsible for evaluating a claim *and paying out* the benefits" because "the administrator's fiduciary interest in granting a valid claim may conflict with its financial interest in denying that claim." *Jackson v. Blue Cross Blue Shield of Mich. Long Term Disability Program*, 761 F. App'x 539, 543 (6th Cir. 2019) (citing *Glenn*, 554 U.S. at 112). These conflicts "do not render the denial of benefits invalid per se, but the reviewing court must take the conflict into account when evaluating the administrator's decision." *Id.* (citing *Curry v. Eaton Corp.*, 400 F. App'x 51, 58 (6th Cir. 2010)); *see Lloyd v. Procter & Gamble Disability Benefit Plan*, No. 20-4329, 2021 WL 4026683, at *11 (6th Cir. Sept. 3, 2021) ("[G]eneral financial incentives, on their own, are not enough to overcome [a] conclusion that the relevant decisions were not arbitrary and capricious.").

9

"For the Court to give great weight to a conflict of interest, 'there must be significant evidence in the record that the insurer was motivated by self-interest, and the plaintiff bears the burden to show that a significant conflict was present.'" *Davis v. Hartford Life & Accident Ins. Co.*, No. 3:14-CV-507-CHB, 2019 WL 4017238, at *7 (W.D. Ky. Aug. 26, 2019) (quoting *Smith v. Continental Cas. Co.*, 450 F.3d 253, 260 (6th. Cir. 2006)), *aff'd*, 980 F.3d 541 (6th Cir. 2020); *see Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 664 (6th Cir. 2013) (noting that courts should give "greater weight to the conflict-of-interest factor when the claimant 'offers more than conclusory allegations of bias.'" (quoting *DeLisle*, 558 F.3d at 445)).

Yocum seeks remand, if not reversal, of Aetna's decision because she asserts that Aetna had the authority to "determine eligibility for benefits and the obligation to pay benefits," creating a "conflict of interest." (D.N. 41, PageID # 1667–68 (quoting *Elliott*, 473 F.3d at 622)) Yocum also contends that there was "an inherent bias" in Aetna's decision-making process because she alleges that Aetna "calculated the maximum value of the claim before it approved the claim." (*Id.*, PageID # 1668)  Aetna responds that it did not determine "the maximum value of the claim." (D.N. 44, PageID # 1743)  Instead, it "calculated the monthly LTD benefit amount" based on Yocum's salary, and its system separately "populated the end-of-benefits date." (*Id.*; *see* D.N. 14-1, PageID # 221–24)  Additionally, Aetna notes that it obtained independent physician reviews from providers who work for Reliable Review Services (RRS), a third party, in an effort to reduce any bias created by its dual role in determining if benefits should be paid and paying the benefits. (D.N. 42-1, PageID # 1721; *see, e.g.*, D.N. 14-1, PageID # 543)  Yocum criticizes Aetna's use of third-party reviewers, arguing that RRS is also biased because "lucrative contracts between Aetna and RRS . . . would be jeopardized if RRS found claimants disabled too frequently." (D.N. 41, PageID # 1666)  As explained below, Yocum's arguments are not persuasive.

10

First, Yocum offers no evidence to support her assertion that Aetna calculated the maximum amount of her LTD claim and then used that calculation as part of its decision-making process. And while Aetna's dual role may create an "inherent conflict of interest," Yocum fails to provide evidence that a more significant conflict exists that would require the Court to find Aetna's decision arbitrary and capricious. *Judge*, 710 F.3d at 664 (finding "no circumstances indicating a need to give the conflict significant weight" when plaintiff "pointed to nothing more than the general observation that [the defendant] had a financial incentive to deny the claim"). Further, Yocum has provided no evidence to support her allegation that RRS was incentivized to deny her claim, and thus, the independent reviews of Yocum's medical file (*see, e.g.*, D.N. 14-1, PageID # 543), mitigate Aetna's "inherent conflict of interest." *Judge*, 710 F.3d at 664; *see Davis*, 2019 WL 4017238, at *8 (finding that when nothing in the administrative record suggested that the independent reviewing physicians "were incentivized to find [the plaintiff] disabled," there was "no fault in the process employed" by the insurer), *aff'd*, 980 F.3d 541 (6th Cir. 2020).

In sum, Yocum's bare allegations of bias do not create a conflict of interest that requires remand or reversal. *See Judge*, 710 F.3d at 663–64 (finding no conflict of interest when plaintiff "point[ed] to nothing more than the general observation that [defendant] had a financial incentive to deny the claim"); *O'Bryan v. Consol Energy, Inc.*, 477 F. App'x 306, 309 (6th Cir. 2012) (agreeing with the district court that there was no conflict of interest because "the use of a third-party administrator lowered the risk of a biased decision and that [the plaintiff] had no evidence of actual bias"); *cf. DeLisle*, 558 F.3d at 445 (finding a significant conflict of interest where plaintiff "offer[ed] more than conclusory allegations of bias" by showing that information given to the physician reviewers "portray[ed] the claimant in a negative light").

### B.        Substantial Evidence

#### 1.        Consideration of Treating-Provider Evidence

Yocum argues that Aetna acted arbitrarily and capriciously by "ignoring favorable evidence from [her] treating physicians." (D.N. 41, PageID # 1664)  While an administrator is "not obligated to blindly accept [a] treating physician's opinions," it "may not arbitrarily disregard reliable evidence proffered by a claimant." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 166–67 (6th Cir. 2007) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006)).  "When an administrator 'focuse[s] on slivers of information that *could* be read to support a denial of coverage and ignore[s]—without explanation—a wealth of evidence that directly contradict[s] its basis for denying coverage,' the administrator's 'decision-making process is not deliberate or principled.'" *Godmar v. Hewlett-Packard Co.*, 631 F. App'x 397, 402–03 (6th Cir. 2015) (quoting *Metro. Life Ins. Co. v. Conger*, 474 F.3d 258, 265 (6th Cir. 2007)).  Still, courts may not impose on administrators "a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Filthaut*, 710 F. App'x at 681–82 (quoting *Nord*, 538 U.S. at 834).

The parties agree that Aetna was not required to defer to Yocum's treating physicians. (D.N. 41, PageID # 1664 (citing *Nord*, 538 U.S at 834); D.N. 44, PageID # 1734)  But they disagree about whether the reviewing physicians adequately considered documents provided by Yocum's treating physicians in support of her LTD claim. (D.N. 41, 1664–65; D.N. 44, PageID # 1734) Specifically, Yocum alleges that Aetna failed to consider two documents that she argues support her disability claim: a Functional Capacity Questionnaire (FCQ) completed by Norton provider Emile Baker in March 2017 and a Capabilities and Limitations Worksheet (CLW) competed by

12

Dr. Daily in March 2018.  (D.N. 34-1, PageID # 1541–44; D.N. 41, PageID # 1664; D.N. 41-1, PageID # 1670–96)  Yocum further alleges, without citation to any evidence, that Aetna based its denial "on a cherry-picking of select records" and intended to deny her claim "from the outset." (D.N. 41, PageID # # 1665)

Yocum's argument that the reviewing physicians failed to adequately consider the FCQ and CLW is not supported by the record.  First, as Aetna notes (D.N. 44, PageID # 1730), it considered Yocum's medical records dated shortly before January 27, 2017, the benefit effective date, when initially reviewing her LTD claim.  (*See* D.N. 14-1, PageID # 407)  Aetna then provided the CLW and FCQ documents to all physicians who reviewed Yocum's appeals (*see e.g.*, *id.*, PageID # 544–45 (providing CLW and FCQ to Dr. Harriman), 552–53 (providing CLW and FCQ to Dr. Stauber)), some of whom discussed the documents in their evaluations.  (*See, e.g.*, *id.*, PageID # 575 (Dr. Risden citing FCQ), 676 (Dr. Jones citing CLW))

Further, the record does not indicate that any reviewing physicians "ignored or misstated evidence." *Filthaut*, 710 F. App'x at 683 (citing *Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 549–50 (6th Cir. 2015)).  Rather, the reviewing physicians considered the FCQ and CLW as part of Yocum's entire medical record and found that she was not functionally disabled after June 1, 2017.  (*See* D.N. 14-1, PageID # 522–23)  Dr. Stauber spoke with Dr. Daily, who told him that she had "not observed any functional impairments which affect [Yocum's] activities of daily living," contradicting the CLW, in which she noted that Yocum was "unable to perform work related tasks."  (*Id.*, PageID # 560, 687; *see* D.N. 41-1, PageID # 1670–96)

While contracting with independent providers to review a claimant's file does not per se prove that an administrator's decision was "supported by substantial evidence," Aetna's reliance on these reviewing physicians' evaluations weighs in favor of a finding that Aetna's decision was

13

not arbitrary or capricious. *Butler v. United Healthcare of Tenn., Inc.*, 764 F.3d 563, 568 (6th Cir. 2014); *see Filthaut*, 710 F. App'x at 683–84 (finding that independent physicians who extensively reviewed the plaintiff's medical records and did not "ignore or misstate" evidence acted neither arbitrarily nor capriciously); *cf. Shaw*, 795 F.3d at 548 (finding that administrator's reliance on reviewing physicians was arbitrary and capricious when the physicians made "factually incorrect assertion[s]" about plaintiff's medical records and ignored key pieces of evidence supporting the claim (quoting *Butler*, 764 F.3d at 568 (internal quotation marks omitted)).

The record likewise does not support Yocum's allegation that Aetna or the reviewing physicians "cherry-pick[ed]" medical records to deny her claim. (D.N. 41, PageID # 1665) Baker completed the FCQ in March 2017, within the time period for which Aetna paid benefits. (*Id.* (citing D.N. 14-1, PageID # 723, 752)) Dr. Daily completed the CLW in March 2018, months after the disputed coverage period. (D.N. 14-1, PageID # 407–08) Yocum cites no other "key pieces of evidence," *Butler*, 764 F.3d at 568, in the record that would support her LTD claim after June 1, 2017, much less "a wealth of evidence." *Godmar*, 631 F. App'x at 403. The Court thus cannot find Aetna's denial arbitrary and capricious on this basis. *See Filhaut*, 710 F. App'x at 683–84.

### 2. Failure to Contact Treating Providers

Yocum argues that Aetna failed to "make a reasonable effort to speak to her [u]rogynecologist before issuing a denial of benefits." (D.N. 41, PageID # 1664–65 (citing *Helfman v. GE Grp. Life Assurance Co.*, 573 F.3d 383, 393 (6th Cir. 2009); *DeLisle*, 558 F.3d at 444; *Cooper*, 486 F.3d at 168)) An administrator must provide reviewing physicians "with all letters from a claimant's physician, which the file reviewer must consider." *Helfman*, 573 F.3d at 393. Further, if an administrator requires a reviewing physician to interview the treating provider,

14

the reviewer should attempt to contact the claimant's treating physician and "wait a reasonable amount of time and establish that the treating physician[] [was] informed of the importance to their patient of a prompt reply." *Cooper*, 486 F.3d at 168. But "persons conducting a file review are not per se required to interview the treating physician." *Helfman*, 573 F.3d at 393.

Assuming Yocum refers to Norton Urogynecology Specialists when she contends that the reviewers failed to contact her "[u]rogynecologists" (D.N. 41, PageID # 1664), the reviewing physicians' failure to contact Norton is not an error that would make Aetna's reliance on the reviews arbitrary and capricious. *See Helfman*, 573 F.3d at 394. First, the only Norton records Yocum provided from the disputed claim period were from her visit in February 2018. (D.N. 14-1, PageID # 702–18) These records do not support a finding of functional impairment, as they list her interstitial cystitis as "resolved" and note that Yocum "needs to follow up with [a gastrointestinal provider]" because she has "[n]o issues currently from a [urogynecology] standpoint." (*Id.*, PageID # 708)

Further, the administrative record indicates that gynecology specialists Drs. Jones and Risden attempted to contact Dr. McQuady, one of Yocum's treating gynecologists, but the number was disconnected. (*Id.*, PageID # 571–78, 671–78) While Yocum does not contend that Aetna's policy requires reviewing physicians to interview her treating physicians, Dr. Risden noted in her evaluation that "per [Aetna], no additional attempts [to contact Dr. McQuady] are required," indicating that reviewers are not required to contact treating providers more than once. (*Id.*, PageID # 578) Following a comprehensive review of Yocum's record, Dr. Risden determined that Yocum was not functionally impaired after June 1, 2017, a finding consistent with Dr. Jones's review of Yocum's file and Norton's records. (*Id.*, PageID # 574–78; *see id.*, PageID # 672–79, 702–18)

Finally, Aetna gave Yocum an opportunity to respond to all provider reviews before issuing its decisions on both appeals. (D.N. 44, PageID # 1736; *see* D.N. 14-1, PageID # 412–49; 475–516) Yocum did not respond to the first set of reviews and responded to the second set by reiterating her symptoms without submitting an updated number for Dr. McQuady, new medical records, or a request that Aetna contact Norton. (D.N. 14-1, PageID # 542) Therefore, Aetna's reliance on Drs. Jones's and Risden's reviews without contacting Norton does not support a finding that its denial was arbitrary and capricious. *See Helfman*, 573 F.3d at 393–94 (holding that reviewer's failure to interview a treating physician did not support a finding that a denial of benefits was arbitrary and capricious when there was no requirement in the plan to interview the treating physician and the medical record "was extensively reviewed").

### 3. Failure to Conduct a Physical Examination

The parties also disagree about whether Aetna's failure to conduct a physical examination of Yocum supports a finding that Aetna's decision was arbitrary and capricious. (D.N. 41, PageID # 1665–66; D.N. 44, PageID # 1737) "[T]he failure to conduct a physical examination—especially where the right to do so is specifically reserved in the plan—may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Filthaut*, 710 F. App'x at 684 (quoting *Calvert v. Firstar Fin. Inc.*, 409 F.3d 286, 295 (6th Cir. 2005)). File-only reviews are "particularly 'questionable'" when "the claim . . . involves a mental illness component." *Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 610 (6th Cir. 2016) (quoting *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 702 (6th Cir. 2014)). Still, "an administrator's decision to conduct a file review rather than a physical examination" is only "one factor in the overall assessment of whether the administrator acted arbitrarily and capriciously." *Filthaut*, 710 F. App'x at 684 (citing *Calvert*, 409 F.3d at 295). And

physical examinations are "more relevant when determining whether a claimant is *currently* disabled." *Connelly v. Standard Ins. Co.*, 663 F. App'x 414, 418 (6th Cir. 2016) (emphasis added) (noting that a physical examination is generally less helpful when a claimant files his disability claim "over a year after his coverage ended").

Yocum argues that Aetna "should have exercised its right to require [her] to undergo a physical examination." (D.N. 41, PageID # 1666) In response, Aetna asserts that a physical examination of Yocum when she filed her LTD claim in mid-2018 would have been much less relevant to her claim than a review of her medical records from the disputed coverage period in 2017. (D.N. 44, PageID # 1737) In the plan policy, Aetna reserved the right to conduct a physical examination of Yocum (D.N. 14-1, PageID # 116), "which may, in some cases, raise questions about the thoroughness and accuracy" of its decision. *Helfman*, 573 F.3d at 393. But a physical exam is usually "less helpful" where, as here, a claimant files a claim for benefits a year after coverage ends and does not have a progressive disability. *Connelly*, 663 F. App'x at 418 (finding that defendant did not act arbitrarily and capriciously in relying on a file-only review when coverage ended in July 2011 and claimant filed more than a year later, in September 2012); *cf. Rochow v. Life Ins. Co. of N. Am.*, 482 F.3d 860, 865–66 (6th Cir. 2007) (finding that it was arbitrary and capricious to fail to conduct a physical examination of a claimant who had a degenerative brain condition that existed during his employment and was progressing when he filed his claim).

In this case, Aetna received Yocum's LTD claim in May 2018 for a claim period that began more than a year before, on January 27, 2017 (D.N. 14-1, PageID # 217, 371–72), and it assigned the first appeal to independent physicians for review in December 2018. (*Id.*, PageID # 671, 681, 690) Yocum does not allege that her disability was progressive and even concedes that a physical

17

examination would "not have conclusively proven disability arising years ago." (D.N. 45, PageID # 1747) Additionally, "the administrative record is replete with medical evidence on which" Aetna based its decision, particularly the reports from seven independent medical providers who all reviewed Yocum's medical records and determined that she was not functionally disabled after June 1, 2017. *Davis*, 2019 WL 4017238, at *9 (citing reports from independent medical reviewers, which supported defendant's decision to terminate disability benefits); (D.N. 14-1, PageID # 542–79, 671–96) Therefore, any failure to conduct a physical examination of Yocum does not support a determination that Aetna's decision was arbitrary and capricious. *See Holden v. Unum Life Ins. Co. of Am.*, No. 20-6318, 2021 WL 2836624, at *13–14 (6th Cir. July 8, 2021) (finding file-only review reasonable when reviewers did not make credibility determinations about plaintiff's complaints of pain and evaluated a comprehensive medical record); *Connelly*, 663 F. App'x at 418.

### 4. Disability Finding by the Social Security Administration

Yocum alleges that Aetna acted arbitrarily and capriciously in denying her LTD benefits without adequately explaining why it disagreed with the Social Security Administration's finding that she was disabled. (D.N. 41, PageID # 1667) While an "administrator is not bound by [a Social Security Administration (SSA)] disability determination when reviewing a claim for benefits under an ERISA plan," *Whitaker v. Hartford Life & Acc. Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005), "the [SSA]'s decision 'is far from meaningless.'" *DeLisle*, 558 F.3d at 446 (quoting *Calvert*, 409 F.3d at 294). "Although there is no technical requirement to explicitly distinguish a favorable Social Security determination in every case," if an administrator encourages or requires a claimant to seek Social Security Disability (SSD) benefits, financially benefits from the SSD disability determination, and then "fails to explain why it is taking a position different from the

SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary and capricious." *Id.* (quoting *Bennett*, 514 F.3d at 554).

Yocum contends that Aetna's denial of her claim after she was awarded SSD benefits without "explaining why it disagreed with the SSA's finding of disability" supports a determination that Aetna's denial was arbitrary and capricious. (D.N. 41, PageID # 1667) Yet Aetna correctly notes that it did not "request or require" that Yocum apply for SSD benefits (D.N. 44, PageID # 1742), and thus its failure to explicitly explain why it took a different position from the SSA does not weigh "in favor of a finding that the decision was arbitrary and capricious." *DeLisle*, 558 F.3d at 446 (quoting *Bennett*, 514 F.3d at 554). Moreover, Yocum failed to provide Aetna with the SSA's written decision during her second and final administrative appeal. (*See* D.N. 14-1, PageID # 663–64) Rather, in response to Dr. Harriman's psychological review, Yocum sent Aetna an SSD evaluation completed by Brendan K. Ryan, M.S., who noted that Yocum had "slight" and "moderate" limitations on a variety of cognitive measures. (*Id.*, PageID # 536–40) Dr. Harriman then considered Ryan's evaluation and submitted an addendum to her initial report, reiterating her determination that Yocum was not cognitively functionally impaired and explaining that, in her view, Ryan's findings "were poorly supported." (*Id.*, PageID # 517–20)

Further, Aetna notes that it had independent physician reviews of Yocum's medical file that the SSA did not (D.N. 44, PageID # 1743; *see* D.N. 14-1, PageID # 543–79, 671–96), providing another reason its conclusion differed from the SSA's award of benefits. *See O'Bryan*, 477 F. App'x at 308 (stating that the administrator differentiated its denial from the SSD benefits award in part because it "had additional medical evidence that the Social Security judge did not"). In sum, this factor does not support a finding that Aetna's denial was arbitrary and capricious. *See Leppert v. Liberty Life Assurance Co. of Bos.*, 661 F. App'x 425, 436 (6th Cir. 2016) (finding that

19

the administrator did not act arbitrarily and capriciously in failing to distinguish its denial from the SSA's grant of disability benefits when plaintiff submitted only the SSA letter notifying him of award); *Cox v. Standard Ins. Co.*, 585 F.3d 295, 302 (6th Cir. 2009) ("We have previously upheld a denial of benefits where independent consultants reviewed the medical records and determined that the claimant was not disabled within the meaning of the policy, although the claimant had been declared disabled by the Social Security Administration." (citing *Whitaker*, 404 F.3d at 949–50)).

### III.

Yocum has failed to show that Aetna's denial of her LTD benefits after June 1, 2017, was arbitrary and capricious. Rather, the administrative record reveals that Aetna's decision was "'the result of a deliberate, principled reasoning process' and 'supported by substantial evidence.'" *DeLisle*, 558 F.3d at 444 (quoting *Glenn*, 461 F.3d at 666). Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    Aetna's motion for judgment on the administrative record (D.N. 42) is **GRANTED**. A separate judgment will be entered this date.

(2)    Yocum's motion for judgment on the administrative record (D.N. 41) is **DENIED**.

December 9, 2021

David J. Hale, Judge
United States District Court